IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

WILLIAM EWING,

        Plaintiff,

        v.

CITY OF TOLEDO; CRAIG MARTIN; BILLIE JO SMITH; and DAVID JAMES ROBINSON,

        Defendants.

No. 6:18-cv-01626-MK

ORDER

AIKEN, District Judge.

    This case comes before the Court on a Findings and Recommendation ("F&R") filed by Magistrate Judge Mustafa Kasubhai. ECF No. 131. Judge Kasubhai recommends that defendants' motion for summary judgment be granted in part.

    Under the Federal Magistrates Act, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate judge's findings and recommendations, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

    For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review.

*See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."). Although no review is required in the absence of objections, the Magistrates Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Id.* at 154. The Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the court should review the recommendation for "clear error on the face of the record."

In this case, defendants have filed timely objections. The Court agrees with Judge Kasubhai's conclusions and adopts the Findings and Recommendations with the following modifications and clarifications.

## I.     First Amendment Whistleblower Retaliation Test

Defendants' first two objections assert that the retaliation claim against Defendant Craig Martin cannot stand because it fails two parts of the five-part inquiry laid out in *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). Judge Kasubhai's conclusion that there remains a genuine issue of material as to the nature of the plaintiff's speech is correct. However, the F&R relies on an outdated test for analyzing claims of whistleblower retaliation. Judge Kasubhai quotes *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) which states "[i]n order to sustain a claim against a government employer for violation of the First Amendment, an employee must show: (1) that he or she engaged in protected speech; (2) that the employer took adverse employment action; and (3) that his or

her speech was a substantial or motivating factor for the adverse employment action."[1]

Although this formulation of the rule has not expressly been overturned, it is not the most current rule as shown by recent Ninth Circuit precedent. Recognizing that First Amendment retaliation law involves "[u]nraveling *Pickering's* tangled history," the Ninth Circuit held that the rule involves:

> a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng* 552 F.3d at 1070. Notably, this *Eng* test was quoted in whole and followed in *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013). It was also quoted in full and followed in the recent case of *Kennedy v. Bremerton Sch. Dist.*, 991 F.3d 1004, 1014 (9th Cir. 2021), rev'd, 597 U.S. 507, 142 S. Ct. 2407, 213 L. Ed. 2d 755 (2022)[2]. It is clear that the Ninth Circuit favors the *Eng* framework for analyzing First Amendment retaliation cases in this context.

The primary difference between the F&R's formation of the test and the *Eng* test lies in the first two inquiries. In *Coszalter*, the Ninth Circuit explained the

---

[1] It should be noted that the Defendants' Motion for Summary Judgment uses this outdated test with the "protected speech" inquiry as well, while their Objections appear to use the updated *Eng* test. ECF No. 111 at 10.

[2] Although the Supreme Court reversed the Ninth Circuit, their decision was not based on problems with the *Eng* framework. The Supreme Court even conducted some of its analysis within this framework, primarily examining the second factor at 597 U.S. at 527-29.

Page 3 – ORDER

"protected speech" inquiry used by the F&R: "[a]n employee's speech is protected under the First Amendment if it addresses 'a matter of legitimate public concern.' *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571, (1968) . . . . The determination of whether an employee's speech deals with an issue of public concern is to be made with reference to 'the content, form, and context' of the speech." 320 F.3d at 973-74 (citations omitted).  As noted by Judge Kasubhai, older case law clarifies that a key part of determining whether an employee's speech addresses a matter of public concern is "whether the employee spoke in order to bring wrongdoing to light or merely to further some purely private interest." *Havekost v. U.S. Dept. of Navy*, 925 F.2d 316, 318 (9th Cir. 1991).  In *Havekost*, the Ninth Circuit ruled that the plaintiff, a grocery bagger working under a license for the Navy, did not engage in protected speech when she circulated a petition asking for her supervisor's termination and voiced workplace concerns to management regarding dress code, scheduling, and responsibility for certain lost commissary profits. *Id*. at 317.  In reaching their conclusion, the court reasoned that these matters did not concern the general public and the heart of the dispute dealt with workplace grievances related to the plaintiff's job responsibilities. *Id*. at 319.

  The *Eng* test's first two inquires ask whether the plaintiff spoke on a matter of public concern and whether the plaintiff spoke as a private citizen or public employee. *Eng*, 735 F.3d at 1070.  There is great similarity in how the courts analyze these two *Eng* inquiries compared with the "protected speech" inquiry.  The "protected speech" inquiry outlined in *Coszalter* and used in the F&R essentially

encompasses the first two inquiries of the *Eng* test. As *Eng* points out, "[i]n the forty years since *Pickering*, First Amendment retaliation law has evolved dramatically, if sometimes inconsistently." *Id.* The "protected speech" inquiry's split into the "public concern" and "private citizen" inquiries as described in *Eng* is the latest evolution.

Nonetheless, applying the updated *Eng* test yields the same conclusion as the analysis used in the F&R: summary judgment is inappropriate for plaintiff's whistleblower claim against Martin. The first question in the five-step inquiry is whether the plaintiff spoke on a matter of public concern. *Eng*, 552 F.3d at 1070. The public concern inquiry is a question of law. *Id.* Considering the fact that plaintiff's speech centered on investigating a six-figure discrepancy in the city budget, it is reasonable to conclude that he was speaking on a matter of public concern.

The second question in this analysis is "whether the plaintiff spoke as a private citizen or public employee." *Id.* at 1071. This inquiry is a mixed question of fact and law. *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1129 (9th Cir. 2008). Specifically, "'the question of the scope and content of a plaintiff's job responsibilities is a question of fact,' and the 'ultimate constitutional significance of the facts as found' is a question of law." *Eng*, 552 F.3d at 1071 (*quoting Posey* 546 F.3d at 1129-30). Employees are speaking as private citizens when they have "no official duty" to make such statements, or if the speech in question was not related to "performing the tasks the employee was paid to perform." *Id.*

In this case, even though plaintiff may have been acting in his role as Fire Chief when he downloaded the financial information, plaintiff's disclosure of the financial information to Chavaria was done as a private citizen. It was well outside the scope of plaintiff's duties as Fire Chief to investigate a discrepancy in the budget by providing Chavaria with the City's financial information. This was made clear by his termination notice, which explicitly stated he was being terminated for sharing this financial information. Notice of Termination Ex. 71 at 1. ECF No. 126-9. Additionally, plaintiff submitted an affidavit which indicated he intended to act as a private citizen, outside the scope of his job responsibilities.[3] ECF No. 121. Given that all inferences must be drawn in favor of the plaintiff, it is correct to conclude that a genuine issue of material fact remains as to the nature of plaintiff's speech.

Thus, applying the *Eng* test, the F&R is correct that summary judgment for defendants on the retaliation claim against Defendant Martin is inappropriate.

## II.   Qualified Immunity

Defendants' third objection asserts that Judge Kasubhai incorrectly concluded that defendants should not be granted qualified immunity. The F&R's denial of qualified immunity is correct. However, it relies on an overly general formulation of the right at issue and so the Court makes the following clarification.

As the Ninth Circuit recently explained, a state official may be denied qualified immunity at summary judgment in a Section 1983 case:

---

[3] The Court concurs with Judge Kasubhai's conclusions regarding Defendants' assertion of a sham affidavit.

> only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood [their] conduct to be unlawful in that situation.

*Isayeva v. Sacramento Sheriff's Department*, 872 F.3d 938, 945 (9th Cir. 2017) (internal quotation marks and citation omitted). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate" at the time of the conduct. *Ashcroft v. al– Kidd*, 563 U.S. 731, 741 (2011).

One critical question in this analysis is how to define the right at issue. Defendants' objection correctly points out that it cannot be too broad, as courts must not "define clearly established law at a high level of generality." *Id.* at 742. Thus, defining the right at issue as the right to exercise First Amendment freedoms is too broad. However, the right as defined must not be so narrow and particularized as to allow "defendants to define away all potential claims." *See Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995).

The F&R defined the right at issue as "the right to be free from retaliation for protected speech." ECF No. 133 at 11 (*quoting* ECF No. 131 at 16). In comparing this formulation with similar cases, this definition is overly broad. *See Greisen v. Hanken*, 925 F.3d 1097, 1112-13 (9th Cir. 2019); *Weeks v. Bayer*, 246 F.3d 1231 (9th Cir. 2001); *Eng*, 552 F.3d at 1075; *Moran v. State of Wash.*, 147 F.3d 839, 850-51 (9th Cir. 1998). A more appropriate formulation of the right at issue and the proper inquiry on the question of qualified immunity is whether "the right for public employees to be free

from retaliation by government supervisors for exercising First Amendment rights" was clearly established at the time of plaintiff's termination.

Defendants are correct that the inquiry for whether a right is clearly established requires "existing *precedent* must have placed the statutory or constitutional question beyond debate." *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021) (emphasis added). The Court clarified in *Ashcroft* that it "do[es] not require a case directly on point." 563 U.S. at 741. Here, several prior cases support the conclusion that the right at issue, as formulated above, was clearly established at the time of the conduct in this case. For example, "[i]n *Karl v. City of Mountlake Terrace*, 678 F.3d 1062 (9th Cir. 2012), we held that 'a reasonable official would . . . have known that a public employee's speech on a matter of public concern is protected if the speech is not made pursuant to her official job duties, even if the testimony itself addresses matters of employment." *Greisen*, 925 F.3d at 1112-13 (internal citations omitted). Additionally, *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 283-284, (1977) held that adverse action against government employees cannot be taken if it is in response to the employee's "exercise of constitutionally protected First Amendment freedoms." Furthermore, in *Eng*, 552 F.3d at 1075, the Ninth Circuit opined "[t]here could be no confusion, however, that when Eng 'comment[ed] upon matters of public concern' 'as a citizen' and *not* pursuant to his job responsibilities, his speech *was* protected by the First Amendment—that rule had long been the law of the land." (quoting *Pickering*, 391 U.S. at 568).

Applying a narrower definition of the right at issue, the Court concludes that the right was clearly established at the time of Martin's conduct. The Court therefore declines to grant summary judgment on the basis of qualified immunity.

The Court has reviewed the F&R and finds no error with its conclusions. The F&R is therefore ADOPTED AS MODIFIED and the motion for summary judgment is GRANTED IN PART.

It is so ORDERED and DATED this 29th day of February 2024.

/s/Ann Aiken
ANN AIKEN
United States District Judge